1   Benjamin Heikali (SBN 307466)
2   **FARUQI & FARUQI, LLP**
    10866 Wilshire Boulevard, Suite 1470
    Los Angeles, CA 90024
3   Telephone: (424) 256-2884
    Facsimile: (424) 256-2885
4   E-mail:  bheikali@faruqilaw.com

5   [Additional Attorneys on Signature Page]

6   *Attorney for Plaintiff*

7
                    **IN THE UNITED STATES DISTRICT COURT**
8                   **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9   STEVEN KATZ, Individually and on          )
    Behalf of All Others Similarly Situated,  )
10                                            )
                    Plaintiff,                )
11                                            )   Case No. 3:21-cv-00555
            v.                                )
12                                            )   **CLASS ACTION COMPLAINT FOR**
    SLACK TECHNOLOGIES, INC.,                 )   **VIOLATIONS OF SECTIONS 14(a) AND**
13  STEWART BUTTERFIELD, ANDREW               )   **20(a) OF THE SECURITIES**
    BRACCIA, EDITH COOPER, SARAH              )   **EXCHANGE ACT OF 1934**
14  FRIAR, SHEILA JORDAN, MIKE                )
    MCNAMARA, JOHN O'FARRELL and              )   **JURY TRIAL DEMANDED**
15  GRAHAM SMITH,                             )
                                              )
16                  Defendants.               )

17

18

19

20

21

22

23

24

25

26

27

28  **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
    THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Steven Katz ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Slack Technologies, Inc. ("Slack" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Slack, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Transaction") between Slack and salesforce.com, inc. ("Salesforce").

2. On December 1, 2020, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $26.79 in cash and 0.0776 shares of Salesforce common stock for each share of Slack stock they own (the "Merger Consideration").

3. On December 23, 2020, in order to convince Slack shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form S-4 (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading preliminary S-4 violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9), each of which constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act.

4. While touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby

- 1 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

violating SEC rules and regulations and rendering certain statements in the S-4 materially incomplete and misleading.

5.    In particular, the S-4 contains materially incomplete and misleading information concerning: (i) the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that Slack shareholders vote in favor of the Proposed Transaction; and (ii) the summary of certain valuation analyses conducted by Slack's financial advisors, Qatalyst Partners LP ("Qatalyst") and Goldman Sachs & Co. LLC ("Goldman") in support of their opinion that the Merger Consideration is fair to shareholders, on which the Board relied.

6.    It is imperative that the material information that has been omitted from the S-4 is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Transaction.

7.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. § 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to Slack shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.    Personal jurisdiction exists over each Defendant either because the Defendant

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Slack maintains its principal executive offices in this District.

## **PARTIES**

11.     Plaintiff is, and at all relevant times has been, a holder of Slack common stock.

12.     Defendant Slack is incorporated in Delaware and maintains its principal executive offices at 500 Howard Street, San Francisco, California 94105.  The Company's common stock trades on the NYSE under the ticker symbol "WORK."

13.     Individual Defendant Stewart Butterfield is Slack's Co-founder and Chief Executive Officer and has been a director of Slack at all relevant times.

14.     Individual Defendant Andrew Braccia has been a director of Slack at all relevant times.

15.     Individual Defendant Edith Cooper has been a director of Slack at all relevant times.

16.     Individual Defendant Sarah Friar has been a director of Slack at all relevant times.

17.     Individual Defendant Sheila Jordan has been a director of Slack at all relevant times.

18.     Individual Defendant Mike McNamara has been a director of Slack at all relevant times.

19.     Individual Defendant John O'Farrell has been a director of Slack at all relevant times.

20.     Individual Defendant Graham Smith has been a director of Slack at all relevant

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1   times.

2   21.   The Individual Defendants referred to in paragraphs 13-20 are collectively

3   referred to herein as the "Individual Defendants" and/or the "Board."

4   **CLASS ACTION ALLEGATIONS**

5   22.   Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of

6   himself and the other public shareholders of Slack (the "Class").  Excluded from the Class are

7   Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated

8   with any Defendant.

9   23.   This action is properly maintainable as a class action because:

10   a.   The Class is so numerous that joinder of all members is impracticable.  As

11   of December 16, 2020, there were approximately 577,000,000 shares of Slack common

12   stock outstanding, held by hundreds of individuals and entities scattered throughout the

13   country.  The actual number of public shareholders of Slack will be ascertained through

14   discovery;

15   b.   There are questions of law and fact that are common to the Class that

16   predominate over any questions affecting only individual members, including the

17   following:

18   i)   whether Defendants disclosed material information that includes

19   non-GAAP financial measures without providing a reconciliation

20   of the same non-GAAP financial measures to their most directly

21   comparable GAAP equivalent in violation of Section 14(a) of the

22   Exchange Act;

23   ii)   whether Defendants have misrepresented or omitted material

24   information concerning the Proposed Transaction in the S-4 in

25   violation of Section 14(a) of the Exchange Act;

26

27

28

- 4 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading S-4.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## SUBSTANTIVE ALLEGATIONS

**I.     The Proposed Transaction**

24.    Slack is a channel-based messaging platform that offers a secure, enterprise-grade scalable environment for people to work together more effectively, connect all their other software tools and services and find the information they need to do their work.

25.    On December 1, 2020, Slack and Salesforce issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

> SAN FRANCISCO--(BUSINESS WIRE)--Salesforce (NYSE: CRM), the global leader in CRM, and Slack Technologies, Inc. (NYSE: WORK), the most innovative enterprise communications platform, have entered into a definitive agreement under which Salesforce will acquire Slack. Under the terms of the agreement, Slack shareholders will receive $26.79 in cash and 0.0776 shares of Salesforce common stock for each Slack share, representing an enterprise value of approximately $27.7 billion based on the closing price of Salesforce's common stock on November 30, 2020.

> Combining Slack with Salesforce Customer 360 will be transformative for customers and the industry. The combination will create the operating system for the new way to work, uniquely enabling companies to grow and succeed in the all-digital world.

> "Stewart and his team have built one of the most beloved platforms in enterprise software history, with an incredible ecosystem around it," said Marc Benioff, Chair and CEO, Salesforce. "This is a match made in heaven. Together, Salesforce and Slack will shape the future of enterprise software and transform the way everyone works in the all-digital, work-from-anywhere world. I'm thrilled to welcome Slack to the Salesforce Ohana once the transaction closes."

> "Salesforce started the cloud revolution, and two decades later, we are still tapping into all the possibilities it offers to transform the way we work. The opportunity we see together is massive," said Stewart Butterfield, Slack CEO and Co-Founder. "As software plays a more and more critical role in the performance of every organization, we share a vision of reduced complexity, increased power and flexibility, and ultimately a greater degree of alignment and organizational agility. Personally, I believe this is the most strategic combination in the history of software, and I can't wait to get going."

> **Acquisition to Create the Operating System for the New Way to Work**

> The events of this year have greatly accelerated the move by companies and

- 6 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

governments to an all-digital world, where work happens wherever people are—whether they're in the office, at home or somewhere in between. They need to deliver connected experiences for their customers across every touchpoint and enable their employees to work seamlessly wherever they are.

Together, Salesforce and Slack will give companies a single source of truth for their business and a unified platform for connecting employees, customers and partners with each other and the apps they use every day, all within their existing workflows.

**Slack to Become the New Interface for Salesforce Customer 360**

Salesforce is the #1 CRM that enables companies to sell, service, market and conduct commerce, from anywhere. Slack brings people, data and tools together so teams can collaborate and get work done, from anywhere. Slack Connect extends the benefits of Slack to enable communication and collaboration between a company's employees and all its external partners, from vendors to customers.

Slack will be deeply integrated into every Salesforce Cloud. As the new interface for Salesforce Customer 360, Slack will transform how people communicate, collaborate and take action on customer information across Salesforce as well as information from all of their other business apps and systems to be more productive, make smarter, faster decisions and create connected customer experiences.

**Slack To Expand Enterprise Footprint as Part of the World's #1 CRM**

Slack serves leading organizations in every industry around the world, from the fastest growing startups to Fortune 500 companies, such as Starbucks, Target and TD Ameritrade, along with leading academic institutions, non-profits, and governments in more than 150 countries.

As part of the world's #1 CRM, Slack will be able to expand its presence in the enterprise, not just among Salesforce customers, but for any company undergoing digital transformation. Upon the close of the transaction, Slack will become an operating unit of Salesforce and will continue to be led by CEO Stewart Butterfield.

**Combination to Form the Largest Open Ecosystem of Apps and Workflows for Business**

Connecting people and data across systems, apps and devices is one of the biggest challenges companies face in today's all-digital world.

Slack's open platform seamlessly integrates with more than 2,400 apps that people use to collaborate, communicate and get work done. With the largest

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

enterprise app ecosystem, the Salesforce platform is the easiest way to build and deliver apps to connect with customers in a whole new way.

Together, Salesforce and Slack will create the most extensive open ecosystem of apps and workflows for business and empower millions of developers to build the next generation of apps, with clicks not code.

**Details on the Proposed Transaction**

The board of directors of each of Salesforce and Slack have approved the transaction and the Slack board recommends that Slack stockholders approve the transaction and adopt the merger agreement. The transaction is anticipated to close in the second quarter of Salesforce's fiscal year 2022, subject to approval by the Slack stockholders, the receipt of required regulatory approvals and other customary closing conditions.

Salesforce has also entered into a voting agreement with certain stockholders of Slack common stock, under which each such stockholder has agreed to vote all of their Slack shares in favor of the transaction at the special meeting of Slack stockholders to be held in connection with the transaction, subject to certain terms and conditions. The Slack shares subject to the agreement represent approximately 55% of the current outstanding voting power of the Slack common stock.

Salesforce expects to fund the cash portion of the transaction consideration with a combination of new debt and cash on Salesforce's balance sheet. Salesforce has obtained a commitment from Citigroup Global Markets Inc., Bank of America, N.A. and JPMorgan Chase Bank, N.A. for a $10.0 billion senior unsecured 364-day bridge loan facility, subject to customary conditions.

**About Salesforce**

Salesforce, the global CRM leader, empowers companies of every size and industry to digitally transform and create a 360° view of their customers. For more information about Salesforce (NYSE: CRM), visit: www.salesforce.com.

Any unreleased services or features referenced in this or other press releases or public statements are not currently available and may not be delivered on time or at all. Customers who purchase Salesforce applications should make their purchase decisions based upon features that are currently available. Salesforce has headquarters in San Francisco, with offices in Europe and Asia, and trades on the New York Stock Exchange under the ticker symbol "CRM." For more information please visit https://www.salesforce.com, or call 1-800-NO-SOFTWARE.

**About Slack**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Slack has transformed business communication. It's the leading channel-based messaging platform, used by millions to align their teams, unify their systems, and drive their businesses forward. Only Slack offers a secure, enterprise-grade environment that can scale with the largest companies in the world. It is a new layer of the business technology stack where people can work together more effectively, connect all their other software tools and services, and find the information they need to do their best work. Slack is where work happens.

Slack and the Slack logo are trademarks of Slack Technologies, Inc. or its subsidiaries in the U.S. and/or other countries. Other names and brands may be claimed as the property of others.

26.   Slack is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

27.   If the false and/or misleading S-4 is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## II.   The Materially Incomplete and Misleading S-4

28.   On December 23, 2020, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Transaction.  The S-4 solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  informed decision concerning whether to vote in favor of the Proposed Transaction, in violation

2  of Sections 14(a) and 20(a) of the Exchange Act.

3  ### The Materiality of Financial Projections

4      29.    A company's financial forecasts are material information a board relies on to

5  determine whether to approve a merger transaction and recommend that shareholders vote to

6  approve the transaction.  Here, the S-4 discloses "[i]n connection with the transaction with

7  Salesforce, Slack's senior management prepared and approved for use certain unaudited

8  prospective financial information which was provided to and considered by the Slack board and

9  Salesforce, and which was provided to each of Qatalyst Partners and Goldman Sachs . . . ." S-4

10  67.

11      30.    When soliciting proxies from shareholders, a company must furnish the

12  information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule

13  14A sets forth the information a company must disclose when soliciting proxies regarding

14  mergers and acquisitions.  In regard to financial information, companies are required to disclose

15  "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of

16  Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

17      31.    Under Item 10 of Regulation S-K, companies are encouraged to disclose

18  "management's projections of future economic performance that have a reasonable basis and are

19  presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the

20  usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to

21  assure that the choice of items projected is not susceptible of misleading inferences through

22  selective projection of only favorable items."  17 C.F.R. § 229.10(b)(2).

23      32.    In order to facilitate investor understanding of the Company's financial

24  projections, the SEC provides companies with certain factors "to be considered in formulating

25  and disclosing such projections[,]" including:

26          (i) When management chooses to include its projections in a Commission filing,

27          *the disclosures accompanying the projections should facilitate investor*

28  **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

*understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

(ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

33.     Here, Slack's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board specifically relied on the financial forecasts to determine that the Merger Agreement and the Merger are fair to and in the best interests of Slack and its stockholders.  S-4 64.

34.     As discussed further below, the non-GAAP financial projections here do not provide Slack's shareholders with a materially complete understanding of the assumptions and key factors considered in developing financial projections, which assumptions, factors and other inputs the Board reviewed.

### The Financial Projections Relied on by the Board

35.     The S-4 discloses "[i]n connection with the transaction with Salesforce, Slack's senior management prepared and approved for use certain unaudited prospective financial information which was provided to and considered by the Slack board and Salesforce, and which was provided to each of Qatalyst Partners and Goldman Sachs . . . ." *Id.* at 67.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

36.     The S-4 goes on to disclose, *inter alia*, forecasted values for Slack's projected non-GAAP (Generally Accepted Accounting Principles) financial metrics for Q4 2021 through 2031 for: (1) Non-GAAP Operating Income (Loss) and (2) Unlevered Free Cash Flow, but fails to provide (i) the line items used to calculate these non-GAAP metrics nor (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures. *Id.* at 68.

37.     The S-4 defines Non-GAAP Operating Income (Loss) as "[e]xclude[ing] the impact of stock-based compensation." *Id.* at 68 n.1.  Nevertheless, the S-4 fails to reconcile Non-GAAP Operating Income (Loss) to its most comparable GAAP measure or disclose the line items used to calculate Non-GAAP Operating Income (Loss), rendering the S-4 materially false and/or misleading.  *Id.* at 68.

38.     The S-4 defines Unlevered Free Cash Flow ("UFCF") as "non-GAAP operating income (loss), subtracting the impact of cash taxes, and adding or subtracting (as applicable) the net impact of depreciation and amortization, capital expenditures, changes in net working capital, amortization of deferred costs, non-cash operating lease expense and payroll taxes related to stock-based compensation. Unlevered free cash flow excludes the impact of stock-based compensation." *Id.* at 68 n.2. Nevertheless, the S-4 fails to reconcile UFCF to its most comparable GAAP measure or disclose the line items used to calculate UFCF, rendering the S-4 materially false and/or misleading.  *Id.* at 68.

39.     Thus, the S-4's disclosure of these non-GAAP financial forecasts provides an incomplete and materially misleading understanding of the Company's future financial prospects and the inputs and assumptions for which those prospects are based upon.  It is clear that those inputs and assumptions were in fact forecasted and utilized in calculating the non-GAAP measures disclosed and relied on by the Board to recommend the Proposed Transaction in violation of Section 14(a) of the Exchange Act.

40.     The financial projections disclosed on page 68 of the S-4 violate Section 14(a) of the Exchange Act because: (i) the use of such forecasted non-GAAP financial measures alone

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

violates SEC Regulation G, as a result of Defendants' failure to reconcile those non-GAAP measures to their closest GAAP equivalent or otherwise disclose the specific financial assumptions and inputs used to calculate the non-GAAP measures; and (ii) they violate SEC Regulation 14a-9 because they are materially misleading as without any correlation with their GAAP equivalent financial metrics, shareholders are unable to discern the veracity of the financial projections.

41.     As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

### The Financial Projections Violate Regulation G

42.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]

43.     Defendants must comply with Regulation G.  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).

[2]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]     SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (Jan. 22, 2003), *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule*").

- 13 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

in a more accurate pricing of securities."[4]

44.     Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Slack included in the S-4 here) implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

45.     The SEC has required compliance with Regulation G, including reconciliation requirements, in other merger transactions.  *Compare Youku Tudou Inc., et al.*, Correspondence 5 (Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP

---

[4]     SEC, *Final Rule*.

[5]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[6]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

financials relating to a business combination),[7] *with Youku Tudou Inc., et al.*, SEC Staff

Comment Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial

information is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-

A and is thus not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*,

Correspondence 29 (Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have

added a reconciliation of actual and projected EBIT to GAAP net income . . . .").[9]

46.     Compliance with Regulation G is mandatory under Section 14(a), and non-

compliance constitutes a violation of Section 14(a).  Thus, in order to bring the S-4 into

compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP

financial measures to their respective most comparable GAAP financial measures.

### The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9

47.     In addition to the S-4's violation of Regulation G, the lack of reconciliation or, at

the very least, the line items utilized in calculating the non-GAAP measures render the financial

---

[7]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110
465916089133/filename1.htm.

[8]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/
filename1.pdf.

[9]     *Available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/
filename1.htm.  *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of
Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial
measures.  Please revise to provide the disclosure required by Rule 100 of Regulation G."),
*available at* https://www.sec.gov/Archives/edgar/data/907687/000000000010060087/filename
1.pdf.  *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4.
The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the
reconciliation required under Rule 100(a) of Regulation G"), *available at* https://www.sec.gov/
Archives/edgar/data/789132/000000000017025180/filename1.pdf.  The SEC Office of Mergers
and Acquisitions applied Regulation G in these transactions, which reflects the SEC's official
position.  Any claim that the SEC has officially sanctioned the use of non-GAAP financial
forecasts for business combinations when the Board itself created and relied on such non-GAAP
forecasts to recommend a transaction such as the Proposed Transaction is incorrect. The SEC's
website provides certain unofficial guidance for certain matters, called Compliance and
Disclosure Interpretations ("C&DI's") which through the use of Q&As reflect the views of
particular SEC staff and on which certain issuers have in the past claimed an exemption from
Regulation G.  The SEC itself expressly disclaims C&DI's as they are not regulations that have
been reviewed by the SEC, and the SEC expressly states that they are not binding and should not
be relied on.  *See* www.sec.gov/divisions/corpfin/cfguidance.shtml.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

forecasts disclosed materially misleading, as shareholders are unable to understand the differences between the non-GAAP financial measures and their respective most comparable GAAP financial measures. Nor can shareholders compare the Company's financial prospects with similarly situated companies.

48.     Such projections are necessary to make the non-GAAP projections included in the S-4 not misleading for the reasons discussed above.

49.     As such, financial projections are plainly material, and shareholders would clearly want a complete and non-misleading understanding of those projections.

50.     In order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 68, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

### The Materially Misleading Financial Analyses

51.     The summary of the valuation methodologies utilized by Qatalyst and Goldman including the utilization of certain of the non-GAAP financial projections described above by Qatalyst and Goldman, in connection with their valuation analyses, (S-4 71, 77) is misleading and in violation of Regulation 14a-9. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently.  Once a S-4 discloses internal projections relied upon by the Board, those projections must be complete and accurate.

52.     With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the S-4 fails to disclose: (1) the calculated terminal values; (2) the inputs used to calculate the weighted average cost of capital; (3) the inputs and assumptions used to select the UFCF multiple range; (4) Slack's cash and cash equivalents; (5) the value of Slack's estimated federal tax savings; (6) the value of Slack's outstanding convertible debt and non-controlling interests; and (7) the number of fully diluted shares outstanding. *Id.* at 72-73.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

53.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the S-4 fails to disclose: (1) the calculated terminal values; (2) the inputs used to calculate the weighted average cost of capital; (3) the inputs and assumptions used to select the terminal year multiple range; (4) Slack's net debt; (5) the present value of Slack's net operating losses; and (6) the number of fully diluted shares outstanding. *Id.* at 80-81.

54.     Since information was omitted, shareholders are unable to discern the veracity of Qatalyst and Goldman's discounted cash flow analyses. Without further disclosure, shareholders are unable to compare Qatalyst and Goldman's calculations with the Company's financial projections. The absence of any single piece of the above information renders Qatalyst and Goldman's discounted cash flow analyses incomplete and misleading. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

55.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (Aug. 2006).  Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions . . . .

*Id.* at 1577-78 (footnotes omitted).

56.     Therefore, in order for Slack shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

57.     In sum, the S-4 independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Transaction from Slack shareholders.

58.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

59.     Further, failure to remedy the deficient S-4 and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

**<u>COUNT I</u>**
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any [S-4] or consent or

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

62.     As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

63.     The failure to reconcile the non-GAAP financial measures included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

64.     As a direct and proximate result of the dissemination of the false and/or misleading S-4 Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## <u>COUNT II</u>
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

65.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9(a).

67.     Regulation G similarly prohibits the solicitation of shareholder votes by

- 19 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

"mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

68.     Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

69.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4 but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

70.     The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

71.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

72.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the S-4 or

- 20 -

failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

73.     Slack is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

74.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

75.     As a direct and proximate result of the dissemination of the false and/or misleading S-4 Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT III
### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

76.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Slack within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors and/or officers of Slack, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

78.    Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the S-4.

80.    In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

81.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C.      Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Transaction;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  January 23, 2021

Respectfully submitted,

**FARUQI & FARUQI, LLP**

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

By: _/s/ Benjamin Heikali____
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: (424) 256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

- 23 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Steven Katz ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Slack Technologies, Inc. ("Slack") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Slack securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 21st day of January, 2021.

Steven Katz

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 11/07/19 | 400 |
| | | |
| | | |